FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2016 OCT 26 PM 3:57

JEFFREY P. COLWELL
CLERK

BY________DEP. CLK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-02517-GPG
(To be supplied by the court)

Mia M. Shields,

Plaintiff,

v.

The United States Postal Service,

Defendant.

---

## TITLE VII COMPLAINT

---

## PARTIES

1. Plaintiff Mia M. Shields is a citizen of United States who presently resides at the following address:
2981 Niagara Street Denver, Co. 80207

2. Defendant United States Postal Service lives at or is located at the following address:
7500 E. 53RD PLACE Denver, Co 80225

Attach a separate page, if necessary, to list additional parties.

## JURISDICTION

3. Jurisdiction is asserted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5.

4. Defendant is an employer within the meaning of Title VII.

5. The alleged unlawful employment practices took place at the following location:
7500 E 53RD PLACE Denver Co 80225

(Rev. 07/06)

6. Jurisdiction also is asserted pursuant to the following statutory authority:

______________________________________________________________

## ADMINISTRATIVE PROCEDURES

7. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission or other appropriate administrative agency on 8/23/2014 (date) regarding the alleged discriminatory conduct by Defendant(s).

8. Plaintiff received from the Equal Employment Opportunity Commission or other appropriate administrative agency a Notice of Right to Sue the Defendant(s) on 10/28/2014 (date). (Please attach to the complaint a copy of the Notice of Right to Sue.)

## NATURE OF THE CASE

9. Defendant has discriminated against Plaintiff because of the following: (please check all that apply)

_____ Race __ Color _____ Religion

_____ Sex __ National Origin

✓ Other (please specify) Wrongful termination/FMLA Discrimination

10. Defendant has discriminated against Plaintiff because of the following: (please check all that apply)

_____ Failure to hire

_____ Failure to promote

✓ Demotion/discharge from employment

_____ Other (please specify) Wrongful termination

16-cv-02517-GPG

## REQUEST FOR RELIEF

Plaintiff requests the following relief: I seek judgement against the USPS for (future) lost wages in excess of 120,000 for lost wages and 180,000 for wrongful termination and discrimination due to my on the job traumatic Back injury/ Disability.

Date: 10-26-2014

(signature)
(Plaintiff's Original Signature)

2981 NIAGARA STREET
(Street Address)

Denver, Co 80207
(City, State, ZIP)

720-327-1509
(Telephone Number)

16-cv-02517-GPG

FIRST CLAIM FOR RELIEF AND SUPPORTING FACTUAL ALLEGATIONS

(Please number your paragraphs and attach any necessary additional pages. Alternatively, you may attach to the complaint a copy of the charge of discrimination you submitted to the Equal Employment Opportunity Commission.)

1. A 49 year old female mail collector and career mail carrier technician 2. Separated after a traumatic back injury, injured on the job on duty after striking my lower back on the steel steps exiting the 2 ton postal vehicle in a snow storm on March, 2014.. I was wrongfully separated on the 17th month of employment so I would not be eligible for (FERS) disability retirement. 3. The post office claimed unacceptable attendance. Exhibit A 4. The Post Office changed my position and work location from Denver to Northglenn CO. which was 28 miles away from my address requesting a 7:30 AM start time. Driving 14 miles there and back in rush hour traffic every day. 5. I was in the union with an agreement between the National Association of letter carriers and the United States Postal Service. They refused to help me after my separation. Exhibit C 6. I was not reasonably accommodated. I had a traumatic back injury 03/11/2014, the USPS assigned me to carry a double satchel full time route 5 months later resulting in severe nerve damage and causing my injuries to become worst than they were. The referee USPS doctor Davis wrote in a report on 06/20/16 that I should not push, pull, or lift over 20 Lbs. and I should not work over 4 hours per day. Exhibit D 7. On 10/10/16 Bennett I. Machanic takes me off work completely, places me on a muscle relaxant and physical therapy. Recognizes distinct lack of recognition of temperature over my feet exhibit E, F, G 8. I wrote a letter to the Office of workers compensation program dated 09/12/2016 requesting compensation because they are not compensating me at all exhibit H. 9. The USPS purposely changed my enter on duty date from May 18, 2013 to May 14, 2014 and claims I was a probationary employee exhibits I and J. 10. On May 13, 2016 OWCP appointed Dr. Zimmer wrote in his EMG report : Absent peroneal nerve sensory response is noted bilaterally. 11. Page 2 of Dr. Davis report shows Dr. Zimmers neurological examination of the lower extremities is sensory examination is subjectively dulled over both feet. Exhibit K,L 12. On 12/1/2015 Dr. Scott J. Primack DO, writes I have a 6% permanent impairment of the lower right extremity. Exhibit M 13. I have included my MRI DATED 05/12/2016 showing exaggeration of lumbar spine, progression of my injury. Exhibit N and O 14. I had a national agreement between the National association of letter carriers and the United States Postal Service 2011-2016 Article 16 Discipline procedure Section 1 principles. Pg 79 Article 16.2 Exhibits P and Q show the ~~applied~~ implied m.s. contract. I called the EEOC REQUESTING A RIGHT TO SUE. They advised me the separation letter serves as my right to sue and advised me I called them to file complaints against the USPS three Times in 2014.

Mia M. Shields

10-26-16

16:cv-02517-GPG

Exhibit A

UNITED STATES POSTAL SERVICE

04244021

Letter of Separation
Probationary Employee

UNITED STATES POSTAL SERVICE

CONFIDENTIAL

DATE: October 28, 2014

SUBJECT: Letter of Separation

TO: Mia Shields
PO Box 7122
Denver, CO 80207-0122

You are hereby notified that you will be separated from the Postal Service effective upon receipt of this notice.

The reasons for this action is unacceptable attendance.

Samantha Sears
Supervisor, Customer Services

16 cv-02517-Gpg

OTHER

Exhibit B

CCA NAME: MIA SHEILDS

STATION NAME: NORTHGLENN

Date: 8/20/2014

The Denver Post Office will be converting CCA's to career status effective Saturday, 8/23/2014

Your new assignment will be (circle one):

Regular carrier route / Carrier Technician / Unassigned Regular

Your duty station will be: ______NORTHGLENN______

Your new route assignment (if applicable) will be: ______N/A______

Your new schedule will be: ______7:30-4:00pm______

Your scheduled day off rotation will be: ______Brown______

Your lunch period will be set for 30-minutes

______LEVI LOPEZ______
Station EAS printed name

______
Station EAS signature

NORTHGLENN BR DENVER CO 80233
AUG 20 2014
USPS

______8/20/2014______
Date

______
Round date stamp

Cc: Theresa Bianchi
Station file

16:cv-02517-6pg

UNITED STATES POSTAL SERVICE®

Exhibit C

cap.hill 04244021

Revised Standard Form 1187
(February 2013)

# UNITED STATES POSTAL SERVICE AUTHORIZATION FOR DEDUCTION OF DUES FOR CITY CARRIER ASSISTANTS

NAME OF EMPLOYEE (Print, Last Name, First, Middle) PLEASE WRITE LEGIBLY AND FIRMLY
Shields Mia M.

SOCIAL SECURITY NO. 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

HOME ADDRESS (Street and Number) P O BOX 7122 (City and State) Denver, Co. (Zip Code) 80207

HOME PHONE NO. Area Code (720) 327-1509

AGENCY (Include Bureau, Division, Branch or other Designation)
U.S. POST OFFICE AT DENVER (City) CO (State)

**SECTION A-FOR USE BY EMPLOYEE ORGANIZATION**

| NAME OF EMPLOYEE ORGANIZATION (Indicate local, branch or other appropriate identification) | BRANCH NUMBER | FINANCE NUMBER (WHERE EMPLOYED) |
|---|---|---|
| **L–NATIONAL ASSOCIATION OF LETTER CARRIERS** | 47 | 07-2333 |

I hereby certify that the regular dues of this organization for the above named member are currently established at $ 23.21 biweekly.

UNION TRANSFER – CANCEL DUES TO: APWU, NPMHU OR NRLCA (Circle Union)

SIGNATURE AND TITLE OF AUTHORIZED UNION OFFICIAL: Wayne Mait Pres. Br. 47 DATE 5/22/13

**SECTION B-AUTHORIZATION BY EMPLOYEE**

I hereby assign to the **National Association of Letter Carriers, AFL-CIO,** from any salary or wages earned or to be earned by me as your employee (in my present or any future employment by you if I am re-hired as a bargaining unit employee within 180 days after the conclusion of my present term of employment) such regular and periodic membership dues as the union may certify as due and owing from me, as may be established from time to time by said Union. I authorize and direct you to deduct such amounts from my pay and to remit same to said Union at such times and in such manner as may be agreed upon between you and the Union at any time while this authorization is in effect, which includes a $20.00 yearly subscription for the Postal Record as part of the membership dues. I understand that this assignment, authorization and direction shall have no effect on any Postal Service decision concerning the length of my current term of employment or to hire me for any new term of employment.

**Notice:** Contributions or gifts to the National Association of Letter Carriers, AFL-CIO are not tax deductible as charitable contributions for Federal income tax purposes. However, they may be tax deductible under other provisions of the Internal Revenue Code.

This assignment, authorization and direction shall be irrevocable for a period of one (1) year from the date of delivery hereof to you, and shall remain in effect if I should be re-hired within 180 days after the conclusion of my present term of employment. I agree and direct that this assignment, authorization and direction shall be automatically renewed, and shall be irrevocable for successive periods of one (1) year, unless written notice is given by me to you and the Union Via USPS Form 1188 not more than twenty (20) days and not less than ten (10) days prior to the expiration of each period of one (1) year in the event I am hired as a career employee, or within ten (10) days after the date I start work if I am rehired for any new term of city carrier assistant employment.

This assignment is freely made pursuant to the provisions of the Postal Reorganization Act and is not contingent upon the existence of any agreement between you and my Union.

SIGNATURE OF EMPLOYEE: Mia M. Shields DATE 05/20/2013

RECEIVED AT MAY 28 2013 HRShared SvcCtr GREENSBORO NC 2749

DATE OF DELIVERY TO EMPLOYER: SGS, PPS, HRSSC, PPS, 5/31/13

ORIGINAL – USPS HR SHARED SERVICES CENTER (HRSSC)
2nd COPY – N.A.L.C. NATIONAL HEADQUARTERS
3rd COPY – N.A.L.C. BRANCH COPY
4th COPY – MEMBER'S COPY

16-cv-02517-6pg

USPS HR SHARED SERVICES CENTER (HRSSC)

SF1187

Orthopedic Evaluatorsmorg Exhibit D 720-855-8844 p.2

ME-OW

## Work Capacity Evaluation Musculoskeletal Conditions

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

| Injured Worker's Name (*First, middle, last*) | OWCP No. | OMB No: 1215-0103 |
|---|---|---|
| Mia M. Shields | 125062829 | Expires: 09-30-2011 |

Please answer the questions below concerning your patient (named above) for whom the Office of Workers' Compensation Programs (OWCP) has accepted the following conditions:

lumbosacral sprain

1a. Is the worker capable of performing his/her usual job? ☐ Yes ☒ No. If no, please explain.

persistent back pain - no neurological deficit

**Many employers can readily accommodate medical restrictions including assignment of the injured worker into an alternative work location.**

b. If the claimant is unable to perform his her usual job, is the claimant able to work for 8 hours per workday with restrictions? ☐ Yes ☒ No. If no, please provide medical reasons to support your opinion.

4 hours advised with restrictions - progressing

c. If less that 8 hour per workday, how many can he/she work? 4 hours at this time.

d. Do you anticipate an increase in the number of hours this person will be able to work? ☒ Yes ☐ No

e. If yes, when will this person achieve an 8 hour workday? If no, please provide medical reasons to support your opinion

uncertain - dependent on exercise and motivation

f. How long will the restrictions apply? to be reevaluated 3 months

g. Has maximum medical improvement been reached? ☒ Yes ☐ No.

2. Please indicate whether this person has any LIMITATION in the activity listed and how many hours this person can perform each activity. If there are limitations in lifting, pulling and/or pushing, please provide the maximum number of pounds that can be handled by this person.

| Activity | Limitation | # of Hours Able to Work |
|---|---|---|
| Sitting | ___ Yes | |
| Walking | ___ Yes | |
| Standing | ___ Yes | |
| Reaching | ___ Yes | |
| Reaching above Shoulder | ___ Yes | |
| Twisting | ___ Yes | |
| Bending/Stooping | ___ Yes | |
| Operating Motor Vehicle at work | ___ Yes | |
| Operating a Motor Vehicle to/from work | ___ Yes | |

| Activity | Limitation | # of Hours Able to Work | Lbs. |
|---|---|---|---|
| Repetitive Movements: | | | |
| Wrists | ___ Yes | | |
| Elbow | ___ Yes | | |
| Pushing | X Yes | 4 | 20 |
| Pulling | X Yes | 4 | 20 |
| Lifting | X Yes | 4 | 20 |
| Squatting | ___ Yes | | |
| Kneeling | ___ Yes | | |
| Climbing | ___ Yes | | |
| Breaks: Duration | | Frequency | |
| Duration | | Frequency | |

3. Are there OTHER medical facts, situational factors, equipment or devices which need to be considered in the identification of a position for this person? If so, please explain. no

| 4. Physician's Name (*Type or print*) | 5. Telephone |
|---|---|
| J. Stephen Davis, MD | 303-929-3797 |
| 6. Signature [signature] MD | 7. Date 6/20/16 |

The information requested will assist OWCP in determining eligibility to benefits and is required to obtain or retain a benefit. (5 USC 8101 et. seq.)

**Public Burden Statement**

We estimate that it will take an average of 15 minutes per response to complete this information collection including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the Office of Workers' Compensation Programs, U.S. Department of Labor, Room S-3229, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

**DO NOT SEND THE COMPLETED FORM TO THE OFFICE SHOWN ABOVE.**

Form OWCP-5c
Rev October 2001

16-cv-02517-6pg

Exhibit E

BENNETT I. MACHANIC, M.D., LLC
3955 E. EXPOSITION AVENUE, SUITE 100
DENVER, CO 80209
Telephone (720) 583-1754
Fax (720) 941-8894

Practice Limited To
NEUROLOGY
ELECTROMYOGRAPHY

## NEW PATIENT CONSULTATION

October 10, 2016

**RE: Mia Shields**

**IDENTIFYING DATA:** Mia Shields has come to the office today unaccompanied. She is a 49-year-old, left-handed, single female, mother of 1, who has not worked now for about 18 months, but previously was a mail carrier, collector, and driver for the Unites States Postal Service. She is unable to work under current restrictions, which require maximum work of 4 hours a day 20 hours a week and light duty. She was injured while working, March 11, 2014. Now, she is here in the office.

**SUBJECTIVE:** Past medical history comes from the patient exclusively. I do have radiological reports. However, otherwise, I possess no written medical records. I am informed of a previous on-the-job injury of March 11, 2014, but no other injuries. I am not informed of any prior hospitalizations or operations. The patient was provided a pain cream at a Concentra Medical Centers' Clinic, but does not know the name of this. She has been given a prescription for Percocet, but is no longer taking that. She had Vicodin provided by her primary care physician, Dr. Augustine Obinnah, but she used that last time 1 week ago. She says she is in pain, needs something for this, but she really does not like the Vicodin as it "makes me feel weird." She had massage therapy, physical therapy, and acupuncture, but 9 months ago that all ended and besides that did not help very much.

On March 11, 2014, she was driving a large postal delivery truck. She was exiting out of the truck walking down the stairs to the pavement. It was actively snowing and icy. She slipped, falling back, striking her low back against the stairs. She had immediate intense low back pain. However, she did not strike other parts of her body. She reported the incident. She was advised to drive back to the postal center. She was referred to an urgent care center in North Denver. X-rays were done. No fractures were reported. She was given medication, the name of which she does not recall and referred directly to a workers' comp clinic "Concentra Medical Centers" where she saw Dr. Bloch, was started on physical therapy, massage, and acupuncture and about 9 months ago was discharged apparently at maximum medical improvement. However, she has been unable to work for the last 8 months. I do note that she had in May of 2014 lumbosacral spine x-rays. However, these were not definitively diagnostic. However, films have been compared and I now have MRI readings from Denver Integrated Imaging.

Exhibit E

**Mia Shields**
**10/10/16**
**Page 2**

Those were dated May 12, 2016. Conclusions include "L2-L3 slight interval progression of previously seen focal left paracentral disc protrusion with annular tear and narrowing of the central thecal sac to 9.5 mm." Two, L5-S1 tiny central disc protrusion with annular tear, mild right facet arthropathy, left facet capsulitis, some progression compared to the prior films. Three, persistent interspinous bursal swelling at L3-L4, L4-L5, and L5-S1. There is a comment about "active Baastrup's disease." Now, the patient is here in the office explaining to me that she has severe bilateral low back pain. The pain radiates down the right leg to the heel. The pain is also present on the left, but far greater on the right. Sitting results in numbness and tingling in the right leg, but sometimes the right leg even feels weak and seems to drag. There is some numbness and tingling in the left leg and some numbness and tingling in both hands recently; this perhaps starting about a month ago. So, now we have 4 extremities sensory problems and of course the pain in the lower back. The pain in the back gets worse at night, awakens her from sleep. Valsalva-like maneuvers make everything worse too.

**OBJECTIVE:** On clinical examination, Mia appears to be a well-nourished, well-hydrated, but deconditioned female, seems to have a good deal of difficulty getting around, seems to be very uncomfortable sitting in her chair. I find vital signs to be stable. Head appears to be grossly normocephalic, atraumatic without discharge from nose or ears. Neck is supple with good range of motion. Do not hear bruits over head, neck, or supraclavicular fossa. Mental status exam shows her to be alert, generally oriented to time, person, place, and situation. There is no clear-cut aphasia, agnosia, or apraxia. The thoracic spine and neck move well. Lumbar spine is distinctly straightened with lumbosacral paraspinous muscle tightness and tenderness. There is some sacroiliac tenderness and sciatic notch tenderness over both buttock areas. Straight leg raise is positive at about 40 degrees on both sides, yet negative Kernig's, Lasegue's in a classical sense and negative Patrick's. The patient's mental status exam shows her to be alert, generally oriented to time, person, place, and situation. No blatant aphasia, agnosia, or apraxia. Cranial nerves are serially evaluated II through XII. Visual fields are full. Fundi are benign. Pupils are equal, round, and reactive to light and accommodation. Extraocular muscle movements are intact in all directions. No nystagmus or double vision noted. Corneal reactivity and facial sensation intact. Muscles of mastication and facial expression move symmetrically. Palate is midline, tongue midline, sternocleidomastoid is 5/5. Gait and station shows ability to ambulate on tiptoes, heels and perform tandem and conventional gaits. She walks very slowly, very carefully. I do not really detect foot dragging here, although foot dorsiflexion on right is a bit less than left on heel walk. Finger-to-nose and heel-knee-shin done well. Sensory exam does show diminished pin sensation in both hands becoming full at the wrist. Decreased pin sensation over the legs, being full at the mid calves, distinct lack of recognition of temperature over the feet at 0/10 with a 10/10 cold perception over the thighs. Vibratory sensation is intact. Light touch shows distal loss. Position sensation okay. Motor exam shows breakaway weakness distally in the arms and the legs in a symmetrical fashion. Cannot separate this out symmetrically. Cannot separate reflex asymmetry either as it is 2 to 2+ in the arms and legs, especially at the ankles and the knees. Plantars are flexor.

16:cv-02517-Gpg

Exhibit G

**Mia Shields**
**10/10/16**
**Page 3**

**ASSESSMENT:** This patient suffered an on-the-job injury during a slip and fall on March 11, 2014 while working for the US Postal Service. She has persistent and significant lumbosacral strain and although there are radicular complaints, it is somewhat difficult for me to objectify radiculopathy. In fact, the exam more likely suggests the possibility of a small fiber neuropathy. However, I am cognizant of the fact that on previous imaging during May of 2016, disc damage has been revealed at L2-L3 and L5-S1.

**PLAN:** The patient has very limited range of motion today. I am placing her on a muscle relaxant, gave her some samples of Amrix 15 mg to take 1 at 6 p.m. per day. Advised that it has time release qualities but to contact me if she does not tolerate side effects. I would also like to place her in physical therapy. We will be referring her to Cherry Creek Wellness Center. At this point in time, I am going to take her off work completely until we get her stabilized. I do not think she has a "surgical" problem nor do I want to see injections with epidural steroids at this point. However, it remains to be seen how well our conservative interventions will do. She will be followed closely here within the office.

Sincerely,

Bennett I. Machanic, M.D.

BIM: at/hhc

16:cv-02517-Gpg

Exhibit H

Claim # 125062829

September 12, 2016

Every doctor and nurse I saw pertaining to my claim was assigned by the United States Postal Service. Their doctor released me to carry mail too soon. I told them I was not physically able to carry the mail using a double satchel of mail filled with packages and magazines. The USPS released me to carry mail in August of 2014. I was on light duty August of 2014 with a traumatic back injury. The post office sent a letter to me assigning me to work in Northglenn CO as a full time mail carrier technician in August of 2014. I was later assigned to the South Denver Annex. I filed a grievance against a supervisor Samantha Sears with the union representative Lynell at that location for verbal abuse. I advised Samantha Sears that I needed light duty and that I was injured and in pain. I was in the union and I had time accrued to be absent from work. I was employed at the USPS from May 18, 2013 to October 28, 2014. I was a mail carrier technician, prior to that I was a mail collector certified to drive the 2 to vehicle and the LV. I received a letter in the mail from Samantha Sears stating I was separated due to absences. Samantha Sears knew I was not at work because I was injured. This was retaliation for the grievance I filed against her prior to my separation. I had no warning or union representation. This was wrong. The first doctor the USPS sent me to see Dr. Primack stated I had a 6% permanent impairment to my lower right extremity. The OWCP CE Clinton McCuen sent me a letter stating my claim was denied because the USPS refused to sign the schedule award paperwork. The referee Dr. I. Stephen Davis wrote in his work capacity evaluation dated 06/20/2016 stating I was not capable of performing the usual job. No pushing, pulling or lifting more than 20 lbs. and he stated I should only work 4 hours per day with these restrictions. This was determined in 2016. I know I should not have been carrying any mail in 2014 at all if my restrictions are still determined to be light duty 2 years later in 2016. I was injured on the job and the USPS knows this. I am still injured and in severe pain daily. On June 13, 2016 For **SPECIFIC INTERROGATIVES Dr. I Stephen Davis was asked for question # 2. For each condition is the diagnosed condition medically connected to the work injury of March 11, 2014 by direct cause, aggravation, precipitation, or acceleration?** Dr. Davis answered: It is my opinion, to a reasonable degree of medical probability, based in the description of injury on March 11, 2014, that this condition is directly caused by the subject incident. The USPS separated my employment due to my injury, retaliation and to escape liability. I had 2 MRI's done the first one states nothing about Baastrups Disease. The second MRI states active Baastrups disease. This is due to the traumatic injury, strain and sprain. I am praying for justice. I would like approval for loss of wages from 10/28/2014 to present. I should have never been separated from the USPS. I should have been reasonably accommodated. I would also like approval for the schedule award and re-assignment with reasonable accommodation. I am entitled to compensation. I have submitted sufficient proof of my statements. I was a full time career mail carrier technician for the United States Postal Service. I was injured on the job while performing work for the USPS.

Regards,

Mia M. Shields

Mia M. Shields

16-cv-02517-GPG

Exhibit I

UNITED STATES POSTAL SERVICE®

| 01 | Effective Date<br>05-12-2014 | Notification of Personnel Action<br>UNITED STATES POSTAL SERVICE. | 02 | Social Security Number<br>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 |
|---|---|---|---|---|

**EMPLOYEE INFORMATION** — U. S. Postal Service

| | | | | | |
|---|---|---|---|---|---|
| 03 | Employee Name-Last | SHIELDS | 38 | Probation Expir Date | |
| 04 | Employee Name-First | MIA | 39 | FLSA Status | N |
| 05 | Employee Name-Middle | M | 40 | Pay Location | 045 |
| 06 | Mailing Address Street/Box/Apts | PO BOX 7122 | 41 | Rural Carrier-Route | |
| | | | 42 | Rural Carr-L-Rte ID | |
| 07 | Mailing Address-City | DENVER | 43 | Rural Carr-Pay Type | |
| 08 | Mailing Address-State | CO | 45 | Rural Carr-FLSA | |
| 09 | Mailing Address-Zip+4 | 80207-0122 | 46 | Rural Carr-Commit | |
| 10 | Date of Birth | 09-23-1967 | 47 | Rural Carr-EMA | |
| 11 | Veterans Preference | 1 | 48 | Rural Carr-Hours | |
| 12 | Sex | | 49 | Rural Carr-Miles | |
| 13 | Ethnicity-Race | | 50 | Job Sequence | |
| 14 | Disability | 05 | 51 | Occupation Code | 2310-0045 |
| 15 | Leave Comp Date | 05-18-2013 | 52 | Position title | CITY CARRIER ASSISTANT 1 |
| 16 | Enter on Duty Date | 05-18-2013 | 53 | Labor Dist Code | 2100 |
| 17 | Retirement Comp Date | | 54 | Designation/Activity | 84/4 |
| 18 | Serv Anniversary PPYR | | 55 | Position Type | 8 - PSE/CCA/MHA/TE |
| 19 | TSP Eligibility | 1 - INELIGIBLE | 56 | Limit Hours | 0 |
| 20 | TSP Service Comp Date | | 57 | Allowance Code | |
| 21 | Prior CSRS Service | | 58 | Employment Type | |
| 22 | Frozen CSRS Time | | | **SALARY INFORMATION** | |
| 23 | Leave Data Category | 4.00 - HOURS/PP | 59 | Pay Rate Code | H |
| 24 | Leave Data-Chg PPYR | | 60 | Rate Schedule Code | Q - CITY CARR ASST (CCA) |
| 25 | Leave Data-Type | 2 - EARN AL - EARN SL | 61 | Grade/Step | 01/BB |
| 26 | Credit Military Serv | 0000 | 62 | Base Salary | 15.30 |
| 27 | *reserved for future use* | | 63 | Cola | 0.00 |
| 28 | Retirement Plan | 2 - FICA | 64 | Cola Roll-In Ind | |
| 29 | Employee Status | | 65 | Next Step PPYR | |
| 30 | Life Insurance | A0 - Ineligible | 66 | Merit Anniv Date | |
| 31 | Special Benefits | | 67 | Merit Lump Sum | 0.00 |
| | **POSITION INFORMATION** | | 68 | Special Salary Code | |
| 32 | Employ Office-Fin No | 07-2330 | 69 | Protected RSC | |
| 33 | Employ Office-Name | DEN-GENERAL MAIL FACILITY | 70 | Protected Grade/Step | / |
| 34 | Employ Office-Address | MANAGER<br>DEN-GENERAL MAIL FACILITY<br>7500 E 53RD PL | 71 | Expiration PPYR | |
| | | | 72 | Protected RC Hours | |
| 35 | Duty Station-Fin No | 07-2330 | 73 | Protected RC Miles | |
| 36 | Duty Station-Name | DEN-GENERAL MAIL FACILITY | 74 | RC Guaranteed Salary | |
| 37 | Appt Expiration Date | | 75 | Annuity Amount | 0.00 |

**NATURE OF PERSONNEL ACTION**

| | | | | | |
|---|---|---|---|---|---|
| 77 | Nature of Action Code | 352 | 78 | Authority | 39-USC Sect 1001 |
| 79 | Description | TERMINATION-NONCAREER | | | |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 80 | Code | 522 | 81 | Code | | 82 | Code | | 83 | Code | 681 |
| 84 | Remarks | | | | | | | | | | |

PERSON ID:04244021 PERS ASSGN:04244021
LAST DAY IN PAY STATUS 05/12/2014

| | | | | |
|---|---|---|---|---|
| 85 | Authorization<br>MANAGER, HUMAN RESOURCES SHARED SERVICE CENTER | 86 | Processed Date | 05-01-2014 |
| | | 87 | Personnel Office ID | |
| | | 88 | OPF Location | |

PS Form 50, January 2009 (Exception to Standard Form 50)

16-cv-02517-gpg

Claim # 1250628829

UNITED STATES POSTAL SERVICE®

Exhibit J

| 01 | Effective Date 09-20-2014 | Notification of Personnel Action UNITED STATES POSTAL SERVICE® | 02 | Social Security Number 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 |
|---|---|---|---|---|

**EMPLOYEE INFORMATION** U. S. Postal Service

| | | | | | |
|---|---|---|---|---|---|
| 03 | Employee Name-Last | SHIELDS | 38 | Probation Expir Date | 11-20-2014 |
| 04 | Employee Name-First | MIA | 39 | FLSA Status | N |
| 05 | Employee Name-Middle | M | 40 | Pay Location | 009 |
| 06 | Mailing Address Street/Box/Apts | PO BOX 7122 | 41 | Rural Carrier-Route | |
| | | | 42 | Rural Carr-L-Rte ID | |
| 07 | Mailing Address-City | DENVER | 43 | Rural Carr-Pay Type | |
| 08 | Mailing Address-State | CO | 45 | Rural Carr-FLSA | |
| 09 | Mailing Address-Zip+4 | 80207-0122 | 46 | Rural Carr-Commit | |
| 10 | Date of Birth | 09-23-1967 | 47 | Rural Carr-EMA | |
| 11 | Veterans Preference | 1 | 48 | Rural Carr-Hours | |
| 12 | Sex | | 49 | Rural Carr-Miles | |
| 13 | Ethnicity–Race | | 50 | Job Sequence | |
| 14 | Disability | 05 | 51 | Occupation Code | 2310-2010 |
| 15 | Leave Comp Date | 08-23-2014 | 52 | Position title | CARRIER TECHNICIAN |
| 16 | Enter on Duty Date | 05-18-2014 | 53 | Labor Dist Code | 2100 |
| 17 | Retirement Comp Date | 08-23-2014 | 54 | Designation/Activity | 13/4 |
| 18 | Serv Anniversary PPYR | 19 2014 | 55 | Position Type | 1 - FULL TIME |
| 19 | TSP Eligibility | | 56 | Limit Hours | 0 |
| 20 | TSP Service Comp Date | 05-23-2013 | 57 | Allowance Code | |
| 21 | Prior CSRS Service | | 58 | Employment Type | |
| 22 | Frozen CSRS Time | | **SALARY INFORMATION** | | |
| 23 | Leave Data Category | 4.00 - HOURS/PP | 59 | Pay Rate Code | A |
| 24 | Leave Data-Chg PPYR | 19 2017 | 60 | Rate Schedule Code | Q - CITY CARRIERS SCH-2 |
| 25 | Leave Data-Type | 1 - ADVANCE AL - EARN SL | 61 | Grade/Step | 02/ C |
| 26 | Credit Military Serv | 0000 | 62 | Base Salary | 39969.00 |
| 27 | *reserved for future use* | | 63 | Cola | 0.00 |
| 28 | Retirement Plan | E - FERS-FRAE | 64 | Cola Roll-In Ind | |
| 29 | Employee Status | | 65 | Next Step PPYR | 18 2015 |
| 30 | Life Insurance | C0 - Basic Only | 66 | Merit Anniv Date | |
| 31 | Special Benefits | | 67 | Merit Lump Sum | 0.00 |
| **POSITION INFORMATION** | | | 68 | Special Salary Code | |
| 32 | Employ Office-Fin No | 07-2346 | 69 | Protected RSC | |
| 33 | Employ Office-Name | DEN-SOUTH DENVER ANX | 70 | Protected Grade/Step | / |
| 34 | Employ Office-Address | MANAGER DEN-SOUTH DENVER ANX 200 E KENTUCKY AVE | 71 | Expiration PPYR | |
| | | | 72 | Protected RC Hours | |
| 35 | Duty Station-Fin No | 07-2346 | 73 | Protected RC Miles | |
| 36 | Duty Station-Name | DEN-SOUTH DENVER ANX | 74 | RC Guaranteed Salary | |
| 37 | Appt Expiration Date | | 75 | Annuity Amount | 0.00 |

**NATURE OF PERSONNEL ACTION**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 77 | Nature of Action Code | 926 | | | 78 | Authority | 39-USC Sect 1001 | | | |
| 79 | Description | REASSIGNMENT PROMOTION (CAO) | | | | | | | | |
| 80 | Code | | 81 | Code | | 82 | Code | | 83 | Code |
| 84 | Remarks | | | | | | | | | |

PERSON ID:04244021 PERS ASSGN:04244021
PLACED IN POSITION 95709303 PER PPAR RECEIVED 09/19/2014. HRSSC EW 09/25/2014

| | | | | |
|---|---|---|---|---|
| 85 | Authorization MANAGER, HUMAN RESOURCES SHARED SERVICE CENTER | 86 | Processed Date | 09-25-2014 |
| | | 87 | Personnel Office ID | |
| | | 88 | OPF Location | |

PS Form 50, January 2009 (Exception to Standard Form 50)

16:cv-02517-GPG

Exhibit K



the-job incident. Dr. Zimmer reports the examination on May 12, 2016, making note of persistent low back complaints and right lower extremity pain to the heel. Pain is apparent early in the day and somewhat relieved with activity. The neurological examination of the lower extremity is unremarkable, with strength graded 5/5 and reflexes 1+ and equal. Sensory examination is subjectively dulled over both feet. Dr. Zimmer states his impression of a two-year history of low back and right lower extremity complaint, with some radicular qualities, but without objective findings of nerve root impingement.

Today, Mia M. Shields reaffirms the history as reported in my initial letter of February 19, 2016, of low back complaint and right lower extremity pain, with some component of left lower extremity discomfort, numbness and generalized weakness. Mia M. Shields has not returned to work since October 2014. She is at home with a 13-year-old daughter. Recreation includes daily walks in her neighborhood. Chiropractic treatment and physical therapy and acupuncture have not provided satisfactory pain relief. There has been no treatment provided since 2014. Maximum Medical Improvement is dated August 2014.

## PHYSICAL EXAMINATION:

On clinical examination testing Mia M. Shields does have excessive lordosis of her lumbar spine. Her gait pattern is satisfactory. She describes subjective tenderness to pressure at the lower lumbar region. Range of motion of the lumbar spine is markedly restricted to 30° forward flexion, essentially no extension, 20° to 30° of lateral bending and rotation left and right of the midline. Straight-leg raising examination in the sitting position is normal. Straight-leg raising in supine position is permitted on the right to 15°, and on the left to 25°, with complaint of non-radiating low back pain. The bulk and tone of extremity musculature is excellent, with satisfactory strength and sensation distally throughout. Reflexes are graded 1+ and symmetrical.

## SUMMARY:

In summary, it is my opinion, to a reasonable degree of medical probability, based on the current MRI and EMG studies, that Mia M. Shields has subjective complaint of persistent back and leg discomfort without objective findings of permanent injury as causally related to the subject on-the-job incident of March 11, 2014. The degenerative changes as noted are usually responsive to stretching and strengthening exercises, and this would be my primary recommendation in hoping to achieve some degree of improvement. Mia M. Shields is concerned of the diagnosis of Baastrup's disease, which again is a degenerative condition related to her hyperlordosis. There is no objective evidence of nerve root deficit.

It is my opinion, to a reasonable degree of medical probability, that Mia M. Shields has reached Maximum Medical Improvement as of today's evaluation. I cannot verify the date from 2014, as I did not see the claimant at that time. According to the *Guidelines* of the Federal Employee's Compensation Act, there is no award for the spine and extremity complaints are subjective. If there were reference to the spine based on the AMA *Guides to the Evaluation of Permanent Impairment, Sixth Edition*, she would fit under the category of a lumbar spine regional grid classification 1, as stated in Table 17.4. Modifier to the classification for function is 1, physical examination is 0 and clinical studies is 0. However, it is my opinion, to a reasonable degree of medical probability, that there is no

16:cv-02517 6 pg

Exhibit L



appropriate Permanent Impairment Rating for the spine, according to the federal *Guidelines* and no extremity rating.

SPECIFIC INTERROGATIVES:

1. **Please list all diagnoses and explain the diagnosed conditions, if any that are causally related to the work injury of March 11, 2014.**

   It is my opinion, to a reasonable degree of medical probability, that the diagnosis of injury sustained on the job on March 11, 2014 is lumbar spine contusion/strain/sprain, without objective evidence of nerve root impingement.

2. **For each condition is the diagnosed condition medically connected to the work injury of March 11, 2014 by direct cause, aggravation, precipitation, or acceleration?**

   It is my opinion, to a reasonable degree of medical probability, based on the description of injury on March 11, 2014, that this condition is directly caused by the subject incident.

3. **Please calculate the percentage of permanent partial impairment of the claimant's right lower extremity and lower extremity (not the whole person) per the AMA *Guides to the Evaluation of Permanent Impairment, Sixth Edition*.**

   It is my opinion, to a reasonable degree of medical probability, that there is no objective evidence of Permanent Partial Impairment for the claimant's right or left lower extremity causally related to the subject on-the-job incident of March 11, 2014.

4. **Please detail the measurements taken and the tables used, and break out each individual percentage loss, and the basis for determining that loss, as well as the total percentage loss.**

   It is my opinion, to a reasonable degree of medical probability, that there is no objective evidence of motor or sensory deficit in the lower extremities. Spinal conditions are not ratable according to the Federal Employee's Compensation Act.

5. **Please explain any differences, if any, between the figures that you arrived at and those of the attending physician.**

   It is my opinion that there is no objective evidence of injury to either the left or right lower extremity, and rating for spinal injury is not permitted according the Federal Guidelines.

6. **Please give the date that the claimant attained maximum medical improvement.**

   Maximum Medical Improvement was previously states as August 2014. I have no primary knowledge from the date of that evaluation. It is my opinion that Mia M. Shields is at Maximum Medical Improvement as of February 19, 2016.

16-cv-02517-GPG

**US MedGroup**
10355 E Iliff Ave AURORA, CO 80247
Phone: (303) 755-4955 Fax: (303) 755-4956

Exhibit, M

# Transcription

| | | | |
|---|---|---|---|
| **Patient:** | Shields, Mia M. | **Service Date:** | 12/1/2015 |
| **Soc. Sec. #:** | XXX-XX-4083 | **Injury Date:** | 3/11/2014 |
| **Date of Birth:** | 9/23/1967 **Age:** 48 | **Employer:** | USPS-Collections |
| **Service Location:** | CMC - Denver Aurora Southeas | **Dictated By:** | Scott Primack, DO Physiatry |
| **Service ID # :** | 246665393 | **Diagnosis:** | S39.012A STRAIN OF MUSCLE, FASCIA |

**Notes:**

RECHECK REPORT

EMPLOYER: USPS.

Ms. Shields is here today after last being seen several months ago. She still has right lower extremity discomfort secondary to a radiculopathy. She has been through an EMG/NCS evaluation. This was within normal limits. On today's clinical examination, she is guarding going from stand to sit and from sit to stand. There is a positive straight leg raising sign. Sensory examination was minimally diminished at the level of the L5 dermatome on the right side as compared to the left side. There was 5/5 great strength. There was no vasomotor instability. There is no pseudomotor atrophy.

At this point in time, the patient is at max medical improvement. Given her EMG, MRI and the review of the medical records, there is a permanent 6% impairment of the right lower extremity. If there are any questions regarding this report, please do not hesitate to call.

Respectfully,

Scott J. Primack, DO,

Board Certified Physical Medicine and Rehabilitation, Board Certified Electrodiagnostic Medicine, Senior Clinical Instructor of School Public Health, University of Colorado School of Health Sciences

cc: Ms. Mia Shields at 2981 Niagara, Denver, CO 0207.

US Department of Labor, P.O. Box 8300, DFEC Central Mailroom, London, Kentucky 40742-8300

Job Number: 4818

16: cv-02517-GPG

**Dictated By: Scott Primack, DO Physiatry**

**Dictated On:** 12/1/2015 2:44 PM

Exhibit N



Denver Integrated Imaging
939 Broadway
Denver, Colorado 80203
Phone: 1 720-932-0930
Fax: 1 720-932-0931

| | | | |
|---|---|---|---|
| Patient Name | MIA SHIELDS | Case ID | 11008289 |
| Patient DOB | 09/23/1967 | Referring Physician | Alexander Zimmer, MD |
| Exam Date | 05/12/2016 | Exam Description | MR Lumbar Spine w/o Contrast |
| Patient MRN | DII16148420 | | |

**HISTORY:** 48-year-old female with low back pain and right lower extremity pain.

**TECHNICAL FACTORS:** Long- and short-axis fat- and water-weighted images were performed.

**COMPARISON:** 05/13/2014.

**FINDINGS:** No vertebral body compression fracture or suspicious marrow lesion. Lowest axial imaged intervertebral disc designated L4-S1 in keeping with prior convention. Conus medullaris normal signal and caliber with the termination at the L1 level. CSF signal clear. No pathologic dilation of infrarenal abdominal aorta. S1 through S3 sacral segments intact. Sacroiliac joints intact. Persistent interspinous bursal swelling at L3-4, L4-5 and L5-S1. Friction-related subcutaneous edema in lumbar soft tissues. No paralumbar muscle strain.

T11-12: Preserved disc morphology and hydration without spinal canal stenosis.

T12-L1: Preserved disc morphology and hydration without spinal canal or foraminal stenosis.

L1-2: Preserved disc morphology and hydration without spinal canal or foraminal stenosis.

L2-3: Slight interval progression of previously seen focal left paracentral disc protrusion with annular tear and 9.5mm AP diameter of central thecal sac (previously 11.6mm AP diameter). Bilateral facet capsulitis redemonstrated. No foraminal stenosis.

L3-4: Preserved disc morphology and hydration without spinal canal or foraminal stenosis. Bilateral facet capsulitis.

L4-5: Preserved disc morphology and hydration without spinal canal or foraminal stenosis. Bilateral facet capsulitis.

L5-S1: Tiny central disc protrusion with annular tear. No spinal canal or foraminal stenosis. Left facet capsulitis. Mild right facet arthropathy.

**CONCLUSION:**

1. **L2-3 slight interval progression of previously seen focal left paracentral disc protrusion with annular tear and 9.5mm AP diameter of central thecal sac (previously 11.6mm AP diameter). Bilateral facet capsulitis redemonstrated. No foraminal stenosis.**



16-cv-02517-GPG

Denver Integrated Imaging
939 Broadway
Denver, Colorado 80203
Phone: 1 720-932-0930
Fax: 1 720-932-0931

**SHIELDS, MIA - Case # 11008289** **MR Lumbar Spine w/o Contrast - 05/12/2016**

2. **L5-S1 tiny central disc protrusion with annular tear. No spinal canal or foraminal stenosis. Left facet capsulitis. Mild right facet arthropathy. Findings have slightly progressed compared to prior study.**
3. **Persistent interspinous bursal swelling at L3-4, L4-5 and L5-S1. Given some exaggeration of lumbar lordosis, findings favored to represent active Baastrup's disease.**

Thank you for the opportunity to provide your interpretation.

Joseph Ugorji, DO

JU/dt
D: JU 05/13/2016 2:09 PM
T: DT 05/13/2016 2:29 PM

16:cv-02517-G pg

Civil Action No. 16cv

Exhibit P



dure provisions regarding City Carrier Assistant Employees are found in Appendix B.)

[see Memos, pages 197-206]

## ARTICLE 16

## DISCIPLINE PROCEDURE

### Section 1. Principles

In the administration of this Article, a basic principle shall be that discipline should be corrective in nature, rather than punitive. No employee may be disciplined or discharged except for just cause such as, but not limited to, insubordination, pilferage, intoxication (drugs or alcohol), incompetence, failure to perform work as requested, violation of the terms of this Agreement, or failure to observe safety rules and regulations. Any such discipline or discharge shall be subject to the grievance-arbitration procedure provided for in this Agreement, which could result in reinstatement and restitution, including back pay.

### Section 2. Discussion

For minor offenses by an employee, management has a responsibility to discuss such matters with the employee. Discussions of this type shall be held in private between the employee and the supervisor. Such discussions are not considered discipline and are not grievable. Following such discussions, there is no prohibition against the supervisor and/or the employee making a personal notation of the date and subject matter for their own personal record(s). However, no notation or other information pertaining to such discussion shall be included in the employee's personnel folder. While such discussions may not be cited as an element of prior adverse record in any subsequent disciplinary action against an employee, they may be, where relevant and timely, relied upon to establish that employees have been made aware of their obligations and responsibilities.





### Section 3. Letter of Warning

A letter of warning is a disciplinary notice in writing, identified as an official disciplinary letter of warning, which shall include an explanation of a deficiency or misconduct to be corrected.

### Section 4. Suspensions of 14 Days or Less

In the case of discipline involving suspensions of fourteen (14) days or less, the employee against whom disciplinary action is sought to be initiated shall be served with a written notice of the charges against the employee and shall be further informed that he/she will be suspended. A suspended employee will remain on duty during the term of the suspension with no loss of pay. These disciplinary actions shall, however, be considered to be of the same degree of seriousness and satisfy the same corrective steps in the pattern of progressive discipline as the time-off suspensions. Such suspensions are equivalent to time-off suspensions and may be cited as elements of past discipline in subsequent discipline in accordance with Article 16.10.

### Section 5. Suspensions of More Than 14 Days or Discharge

In the case of suspensions of more than fourteen (14) days, or of discharge, any employee shall, unless otherwise provided herein, be entitled to an advance written notice of the charges against him/her and shall remain either on the job or on the clock at the option of the Employer for a period of thirty (30) days. Thereafter, the employee shall remain on the rolls (nonpay status) until disposition of the case has been had either by settlement with the Union or through exhaustion of the grievance-arbitration procedure. A preference eligible who chooses to appeal a suspension of more than fourteen (14) days or his/her discharge to the Merit Systems Protection Board (MSPB) rather than through the grievance-arbitration procedure shall remain on the rolls (non-pay status) until disposition of the case has been had either by settlement or through exhaustion of his/her MSPB appeal. When there is reasonable cause to believe an employee is guilty of a crime for which a sentence of imprisonment can be imposed, the Employer is not required to give the employee the





full thirty (30) days advance written notice in a discharge action, but shall give such lesser number of days advance written notice as under the circumstances is reasonable and can be justified. The employee is immediately removed from a pay status at the end of the notice period.

### Section 6. Indefinite Suspension - Crime Situation

A. The Employer may indefinitely suspend an employee in those cases where the Employer has reasonable cause to believe an employee is guilty of a crime for which a sentence of imprisonment can be imposed. In such cases, the Employer is not required to give the employee the full thirty (30) days advance notice of indefinite suspension, but shall give such lesser number of days of advance written notice as under the circumstances is reasonable and can be justified. The employee is immediately removed from a pay status at the end of the notice period.

B. The just cause of an indefinite suspension is grievable. The arbitrator shall have the authority to reinstate and make the employee whole for the entire period of the indefinite suspension.

C. If after further investigation or after resolution of the criminal charges against the employee, the Employer determines to return the employee to a pay status, the employee shall be entitled to back pay for the period that the indefinite suspension exceeded seventy (70) days, if the employee was otherwise available for duty, and without prejudice to any grievance filed under B above.

D. The Employer may take action to discharge an employee during the period of an indefinite suspension whether or not the criminal charges have been resolved, and whether or not such charges have been resolved in favor of the employee. Such action must be for just cause, and is subject to the requirements of Section 5 of this Article.

### Section 7. Emergency Procedure

An employee may be immediately placed on an off-duty status (without pay) by the Employer, but remain on the rolls where the allegation involves intoxication (use of drugs or alcohol),





pilferage, or failure to observe safety rules and regulations, or in cases where retaining the employee on duty may result in damage to U.S. Postal Service property, loss of mail or funds, or where the employee may be injurious to self or others. The employee shall remain on the rolls (non-pay status) until disposition of the case has been had. If it is proposed to suspend such an employee for more than thirty (30) days or discharge the employee, the emergency action taken under this Section may be made the subject of a separate grievance.

### Section 8. Review of Discipline

In no case may a supervisor impose suspension or discharge upon an employee unless the proposed disciplinary action by the supervisor has first been reviewed and concurred in by the installation head or designee.

In post offices of twenty (20) or less employees, or where there is no higher level supervisor than the supervisor who proposes to initiate suspension or discharge, the proposed disciplinary action shall first be reviewed and concurred in by a higher authority outside such installation or post office before any proposed disciplinary action is taken.

### Section 9. Veterans' Preference

A preference eligible is not hereunder deprived of whatever rights of appeal are applicable under the Veterans' Preference Act. If the employee appeals under the Veterans' Preference Act, however, the time limits for appeal to arbitration and the normal contractual arbitration scheduling procedures are not to be delayed as a consequence of that appeal; if there is an MSPB appeal pending as of the date the arbitration is scheduled by the parties, the grievant waives access to the grievance-arbitration procedure beyond Step B.

### Section 10. Employee Discipline Records

The records of a disciplinary action against an employee shall not be considered in any subsequent disciplinary action if there has been no disciplinary action initiated against the employee for a period of two years.

Upon the employee's written request, any disciplinary notice

2011–2016

# National Agreement

between

the

National Association of Letter Carriers

&

the

United States Postal Service

Civil Action No. 16-cv-02517-Gpg

JS 44 (Rev. 12/11) District of Colorado Form

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO
2016 OCT 26 PM 3:57
JEFFREY P. COLWELL
CLERK
BY ____ DEP. CLK

**I. (a) PLAINTIFFS**
Mia M. Shields

(b) County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

(c) Attorneys *(Firm Name, Address, and Telephone Number)*

**DEFENDANTS**
United States Postal Service

County of Residence of First Listed Defendant Denver
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Med. Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☒ 445 Amer. w/Disabilities Employment
- ☐ 446 Amer. w/Disabilities Other
- ☐ 448 Education

**PRISONER PETITIONS**
Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS - Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district *(specify)*
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
8-2.210 - Employment Litigation Section

Brief description of cause: ☐ AP Docket
Separation after a traumatic Back injury/ National Union Agreement

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 300,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

DATE 10/24/2016

SIGNATURE OF ATTORNEY OF RECORD Mia M. Shields

FOR OFFICE USE ONLY

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______